I. Leo Glasses, J.
A proceeding was instituted by the Commissioner of Social Services pursuant to section 1012 (subd. [f], par. [ii]) of the Family Court Act seeking an order of this court determining that the child named in the petition is a neglected child in that he has been abandoned by his parent or other person legally responsible for his care. The named respondent, is the mother whose whereabouts are unknown. Counsel for the petitioner advised the court that the respondent is believed to be dead but her death has never been verified. It would appear that the respondent has simply vanished from the face of the earth leaving no trace of her existence. A warrant for her arrest was issued on July 25, 1972. She has as yet not been found.
Although the child named in the petition was allegedly abandoned by his mother in 1961 and came into the custody of the Commissioner of Social Services in 1969, no proceeding was instituted until July 10, 1972 either to have the child declared a neglected child in accordance with article 10 of the Family Court Act or to permanently terminate parental cusody by reason of permanent neglect under article 6 of that act. The inducement for instituting this proceeding at all is the fact that the child requires surgery and the petitioner seeks court authorization to have that surgery performed.
The child has been a resident at Children’s Village in Dobbs Ferry, New York, for approximately three years. A pediatrician, whose qualifications as an expert were conceded, testified at a preliminary hearing that the child was examined by a doctor at Children’s Village on November 24,1970. At that time, the right testicle of the child was not felt in his scrotum. The examining doctor noted that the child should be examined again at the end of six months. That was not done. The child was examined again in March, 1972 and his right testicle was still not felt either in the scrotum or the canal. Hormone therapy was suggested and given for six weeks with no positive results. On May 1, 1972 the right testicle was still not felt. The doctor testified that surgery in such a case was necessary for the reason that if it were not performed and the testicle were not brought down, it would not be functional and might become cancerous. He was unable to state whether the testicle did in fact exist or had become atrophied. The only way of determining that was by surgery. Another reason, he testified, for performing surgery *430 in a case such as this was cosmetic. The doctor’s testimony ■'iras uncontradicted.
The Law Guardian designated to represent the child moved to dismiss the petition on the ground that this court lacked jurisdiction, and for the further reason that the petitioner has the power to authorize surgery on a child within his custody without court intervention. On oral argument, the- Law Guardian waived the jurisdictional objection, conceded that the court had jurisdiction, and elected to proceed solely on the latter ground.
Subdivision (b) of section 232 of the Family Court Act provides that ‘ ‘ whenever a child within the jurisdiction of the court appears to the court to be in need of medical, surgical, therapeutic or hospital care or treatment, -a suitable order may be made therefor ”. The statute gives rise to questions which flow from the phrase “ whenever a child within the jurisdiction of the court.” Who is such a child and by what procedural device is he brought within the jurisdiction of the court? It is plain, however, that given such a child, the Legislature has conferred upon this court the. power to make the order requested here. (Matter of Sampson, 65 Misc 2d 658, affd. 37 A D 2d 668, affd. 29 N Y 2d 900; Matter of Seiferth, 309 N. Y. 80; Matter of Vasko, 238 App. Div. 128.)
The remaining contention of the Law Guardian, namely, that the Commissioner of Social Services has the power to authorize surgery without court intervention is predicated upon statutes which empower and obligate public welfare officials to provide neglected children with necessary medical or hospital care. (Social Services Law, § 397, subd. 3 and subd. 4, par. [c], and § 398, subd. 6, par. [c]; see, also, 18 NYCRR 9.8 [b] [13] [ii].) The contention of the Law Guardian raises a host of intriguing questions which appear never to have been judicially considered. Is the consent to surgery by a parent or other person standing in loco parentis to the child necessary only because the child by virtue of his infancy lacks the capacity to consent, or is consent necessary because the parent haé a property interest in the body of his child? If consent is necessary solely because of the child’s incapacity, then does, the Commissioner of -Social Services -nr any other duly authorized association, agency, society or institution (Family-Ct. Act, § 119) charged wit]i the responsibility for care or custody of a child have the power ■to consent? If consent is necessary because the right of the parent in the body of his child is akin to a property right or because there are residual parental rights which remain after the transfer of custody of the child (see Legislature Guide for *431 Drafting Family and Juvenile Court Acts, § 2 [i], [j]), what are those residual rights ? (See Kleinfeld, The- Balance of Power Among Infants, their Parents and the State, 4 Family L. Q. 320, 410 [1970] and 5 Family L. Q. 64 [1971].) What is the nature of the legal relationship created between the child and a person or duly authorized association, agency, society or institution with whom he is placed pursuant to sections 756 or 1055 of the Family Court Act? In such case what are the rights and responsibilities, if any, remaining in the parent vis-avis the person or agency with whom the child is placed? Is there a difference regarding those relationships when the child is remanded pending final disposition rather than placed? Is the person or duly authorized facility liable for failing to provide necessary medical or surgical care? (See Cowley v. People, 83 N. Y. 464.) Are there valid policy reasons for insisting that court authorization be obtained for surgery upon a child and not leaving that decision solely to the public or private agency or official? The desirability, indeed, the necessity, for addressing those questions with intensive scholarship and care is or should be manifest.
For purposes of this proceeding, it is not necessary to come to grips with those questions. Assuming without deciding that the petitioner does have the power to consent to surgery upon a child within his care or custody, the Law Guardian does not contend, nor is there any statutory or judicial basis for the contention, that such authority is exclusive and precludes this court from making an appropfiate order under subdivision (b) of section 232 of the Family Court Act. The motion of the Law Guardian is, therefore, denied.
Sufficient basis having been shown, authorization is hereby given for the necessary operation relating to the undescended right testicle of the child named herein. In accordance with the testimony of the expert witness, the authorization is conditioned upon the surgery being performed by a duly qualified urological surgeon. It is also directed that the Commissioner of Social Services promptly institute abandonment proceedings under the Social Services Law or a proceeding to permanently terminate parental rights under article 6 of the Family Court Act so that ■this child may be freed for adoption. Further proceedings incident to the pending petition are adjourned to October 30, 1972 in Part I of this court.